UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

EDWIN SANTIAGO,

                       Petitioner,

        -against-

ISRAEL RIVERA, Superintendent,

                     Respondent.

-------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

07 Civ. 0785 (BMC)(RLM)

**COGAN**, District Judge.

    This case presents a habeas corpus petition under 28 U.S.C. § 2254 in which petitioner alleges that an evidentiary error by the trial court and an improper summation by the prosecutor deprived him of due process of law. I hold that the Appellate Division's decision rejecting these claims was not contrary to nor an unreasonable application of Supreme Court authority, and I therefore dismiss the petition.

## BACKGROUND

    The case arises from a purse snatching in Brooklyn. The assailant, who the jury found to be petitioner, emerged from a stolen van, grabbed the purse of Raisa Marasanov, and returned to the van. Marasanov went up to the van to plead for her purse back. The van knocked her down, injuring her severely, as it drove off. She was able to get a partial license number, which ultimately led police to arrest petitioner, and she picked him out of a lineup.

    At a pretrial hearing, petitioner moved *in limine* to preclude Marasanov from (a) making any reference to her husband's terminal medical condition; and (b) disclosing what she said to

the assailant when she went to the van to demand her purse back, which included a statement that she needed to retrieve her husband's cancer pills. The trial court granted the motion as to part (a), but ruled that as to part (b), "[w]hatever was said during the criminal activity, I'm not redacting that . . . . Hopefully, she'll testify truthfully to what happened and if that includes that statement, then that comes in."

The evidence did come up at trial. The prosecutor asked Marasanov what was in her bag, and she described the contents, including "all my documents" and "all the papers for medical insurance." She added, without objection, that "my husband at the time was in the hospital and my intention was . . . to take W train to visit him at the hospital." She was then asked if she had her husband's medicine in her pocketbook and she answered, again without objection, "[y]es, I had his medication and also a referral for him to get him to a hospice. There were papers [in the pocketbook] indicating that, unfortunately, he would . . . not be living much longer and it was to place him in hospice."

She further testified without objection that after petitioner got back in the van:

> I got up on my feet and immediately went to the passenger door and start[ed] pleading with them, give me back my things, my husband is dying, I need those papers, I need them, give me back my bag. I didn't want the money, I didn't want anything material in them, in the bag, I needed only the papers concerning my husband.

The defense at trial was mistaken identity; trial counsel contended that Marasanov had picked out the wrong man. Trial counsel pursued that defense by attempting to portray Marasanov as upset and in shock at the time of the attack so that her identification could not be relied upon. The following exchange occurred:

> Q: Now look, you've been working hard since you've been in this country, right?
> A: Very much so.

Q: And you were angry that that man had robbed you that day, right?

A. Not only that. Even more it upsets me and hurts me because of that person –

    DEFENSE COUNSEL: Objecting. Moving to strike it.

    THE COURT: I'm going to allow the answer. Finish the answer.

A: Because of that person, not only I suffered, but I was robbed of the last day of being with my husband while he was alive, because in a few days he passed away and I was not able to be with him.

*   *   *

Q: [A]fter you saw the man in the lineup, did you feel relieved you had found the man that robbed you? If you could, could you answer the question yes or no.

A: No, actually. But I felt hurt and uneasy, because in the darkest and most difficult moment in my life, I had to leave my husband, my dying husband, and go for lineups, one of them in the middle of the night, and tear this last precious moment –

    DEFENSE COUNSEL: I'm moving to strike it.

    THE COURT: I will strike the answer, except the answer is no. She said no.

In summation, the prosecutor attempted to turn the argument concerning Marasanov's mental state against petitioner. He asserted that since it was so crucial to recover her husband's medication, the incident was so important, that Marasanov's identification of petitioner was particularly reliable: "[S]he is . . . trying to get her husband's medication . . . pleading with them . . . . That's how we know we got the right guy. How can you ever forget?" He repeated that theme several times. He also referred to the fact that Marasanov would remember her assailant because, in essence, he had cost her one of her last remaining days with her husband.

Petitioner was convicted of second degree robbery and sentenced to 14 years' imprisonment. On appeal, he attacked both the admission of Marasanov's testimony noted above and the prosecutor's use of it in summation. As to Marasanov's direct testimony, the Appellate Division held that the prosecutor had not violated the motion *in limine* ruling because Marasanov had not mentioned that her husband later died and her statements were "inextricably intertwined" in the narrative of events. The Appellate Division further held that her answers on

cross-examination, when she mentioned that her husband died, would have been contrary to the *in limine* ruling, but that defense counsel had opened the door by asking her about her mental state at the time of the attack. Finally, the Appellate Division held the prosecutor's comments during summation "were either reasonable responses to defense counsel's summation or were fair comment on the evidence." People v. Santiago, 27 A.D.3d 768, 769, 813 N.Y.S.2d 152, 153 (2d Dep't), leave to app. den., 6 N.Y.2d 897, 817 N.Y.S.2d 632 (2006) (internal citations omitted).

This habeas corpus petition, raising the same points, followed.

## DISCUSSION

### I. Applicable Standard

Habeas corpus is available to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2006). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a new standard of review intended to "place[ ] a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399, 120 S.Ct. 1495, 1516 (2000).

A court reviewing a habeas petition under AEDPA may not grant a writ "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The two clauses of subsection (1) have "independent meaning." <u>Williams</u>, 529 U.S. at 364, 120 S.Ct. at 1498. Under the first clause, a state court decision will be considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." <u>Id.</u> at 405-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring). Under the second clause, habeas relief may be granted if the state court decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case . . . ." <u>Id.</u> at 407-08, 120 S.Ct. at 1520. Whether a state decision is an "unreasonable application" of federal law must be based on an objective standard and relief may not be granted unless a relevant state court decision is both erroneous and unreasonable. <u>Id.</u> at 409-11, 120 S.Ct. at 1521-22. "An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable." <u>Yung v. Walker</u>, 296 F.3d 129, 135 (2d Cir. 2002) (citation omitted).

AEDPA thus establishes a deferential standard of review: "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Gilchrist v. O'Keefe</u>, 260 F.3d 87, 93 (2d Cir. 2001) (quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct. at 1495). The Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the

mark as to suggest judicial incompetence." Id. at 93 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted)).


## II. Marasanov's Testimony

Although petitioner adequately, but barely, asserted a federal due process claim in state court, neither there nor here has he cited any Supreme Court authority against which the Appellate Division decision can be tested under 28 U.S.C. § 2254(d). Obviously, numerous Supreme Court cases confirm petitioner's right to a trial that conforms to due process of law, but he faces a heavy burden to show that the Appellate Division decision was contrary to any such Supreme Court case when none of them are reasonably analogous to this one. "The range of judgments that can be deemed 'reasonable' may vary with the nature of the rule in question." Serrano v. Fischer, 412 F.3d 292, 297 (2d Cir. 2005) (citation omitted). "The more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 2149 (2004).

The Supreme Court authority in habeas cases for evidentiary error of constitutional magnitude provides for a stringent standard. A State court's evidentiary rulings, even if erroneous under State law, generally do not present constitutional issues cognizable in a habeas corpus petition. See Crane v Kentucky, 476 U.S. 683, 689, 106 S. Ct. 2142, 2146 (1986) ("We . . . acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."). In order to prevail on a claim that an evidentiary error deprived a defendant of due process, he must show that the error "was so pervasive as to have denied him a fundamentally fair trial." Collins v Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399 (1976)). See also Hughes v.

Phillips, 457 F.Supp.2d 343, 367 (S.D.N.Y. 2006). The erroneous admission of the evidence must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins, 755 F.2d at 19. See also Agurs, 427 U.S. at 112, 96 S.Ct. at 2401; Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (citing Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)). The evidence must be "crucial, critical, highly significant." Collins, 755 F.2d at 19 (citation omitted). In assessing materiality, the Court reviews the admitted evidence "in light of the entire record before the jury." Id.

Petitioner's claim of constitutional error in the admission of Marasanov's statements cannot meet this standard. If there was an error in admitting the testimony, it was not so pervasive that it affected the fundamental fairness of petitioner's trial. The Appellate Division did not rule contrary to or unreasonably apply Supreme Court authority because the testimony was neither "sufficiently material to provide the basis for conviction" nor did it "remove a reasonable doubt that would have existed on the record without." Id.; see also Agurs, 427 U.S. at 112, 96 S.Ct. at 2401. The testimony did not go directly to petitioner's guilt or innocence at all. Rather, on direct examination, the testimony was part of the *res gestae* of the crime; as the trial court stated, "this was an important part of her state of mind, her husband's situation at the time, and I think it was a natural thing for her to talk about." On cross-examination, defense counsel took a calculated risk that by inquiring into Marasanov's distraught mental state in order to question the reliability of her identification he would find out that there were other reasons why the attack was particularly distressing.

Viewing this piece of evidence in the totality of the case yields the same conclusion. The Appellate Division's decision was buttressed by the strength of the case against petitioner.

Despite a variety of efforts to impeach her recollection, Marasanov remained steadfast in maintaining her pretrial identification of petitioner. The evidence showed that she had ample opportunity to look closely into the assailant's face during the incident. She had, in fact, failed to pick anyone out of two prior lineups in which petitioner was not included. Moreover, other evidence showed that petitioner, when he was brought in for the lineup, admitted his presence in the van during the attack (although he claimed he was only a witness not the perpetrator of the crime). In light of these facts, any concern about the jury convicting on the basis of sympathy for Marasanov's loss of her husband is speculative at best. It is even more speculative considering that Marasanov testified without objection as to the details of the devastating injury she sustained when the van knocked her down. Finally, as quoted above, the trial judge struck the most inflammatory comment that Marasanov made concerning her husband.[1]

The Appellate Division's decision was therefore neither contrary to nor an unreasonable application of Supreme Court authority.

## III. The Prosecutor's Summation

For habeas corpus to lie, the prosecutorial misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)). Typically, "[r]emarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct." United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002) (quoting United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999) (internal quotation marks omitted)). Indeed,

---

[1] Petitioner complains that the trial judge never instructed the jury on what it meant to strike testimony, limiting his instruction to the jury's obligation to disregard material to which the trial judge sustained an objection. The difference is too subtle to be of constitutional dimension; indeed, defense counsel never requested a broader instruction.

"[a]n aggrieved party must show more than mere trial error to secure reversal; he must demonstrate misconduct so egregious that, when viewed in the context of the entire trial, it substantially prejudiced him." United States v. Newton, 369 F.3d 659, 680 (2d Cir. 2004); see United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone."); United States v. Rodriguez, 968 F.2d 130, 142 (2d Cir. 1992) ("It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.").

In assessing whether a defendant has sustained substantial prejudice, the court is to "consider the severity of the alleged misconduct, any curative measures taken by the trial court, and the likelihood of conviction absent the challenged conduct." Newton, 369 F.3d at 680; see Elias, 285 F.3d at 190. "Prosecutorial misconduct during summation is grounds for reversal only when the remarks caused substantial prejudice to the defendant." Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (citation omitted). The prosecutor's remarks have to be considered in context. Blissett v. Lefevre, 924 F.2d 434, 440 (2d Cir. 1991); see Darden, 477 U.S. at 179, 106 S.Ct. at 2470.

Petitioner's principle challenge is to two rhetorical techniques that the prosecutor used. First, he accuses the prosecutor of "vouching" for his witnesses by stating four times that "[w]e know we have the right guy." Vouching, of course, a practice in which a prosecutor asks the jury to accept his own judgment as to the witnesses' credibility, is improper. Newton, 369 F.3d at 681. The concerns are two-fold; that vouching may prejudice a defendant by suggesting to a jury that there is additional evidence, not introduced at trial but known to the prosecutor, that supports the witness's credibility, and that speaking with the authority of the State may induce

the jury to trust the prosecution's view of the evidence instead of its own. Id. (citing Young, 470 U.S. at 18-19, 105 S.Ct. at 1048).

The prosecutor might have been better served to phrase his "have the right guy" comments slightly differently, perhaps by replacing the "we know" with "I submit." See United States v. Perez, 144 F.3d 204, 210 (2d Cir. 1998) (approving use of "I submit"). Nevertheless, this semantic critique does not rise to the level of a denial of due process. Viewed in context, each such comment was made in close proximity and tightly tied to references to specific facts that were part of the record before the jury. There was no implication at all that the prosecutor had other facts known only to him, nor that the jury should trust him over their own judgment. The context makes it clear that he was arguing his view of the evidence in the case, nothing more. "Because the prosecutor did not imply the existence of extraneous proof we cannot say that his statements were an improper vouching for the credibility of witnesses." Id. (internal quotation marks omitted).

Petitioner's second issue with the summation was that the prosecutor twice mentioned the fact that Marasanov's husband had died. The prosecutor's references were a retort to defense counsel's argument that Marasanov was so upset and so driven to obtain revenge against her perceived assailant that she might have misremembered his appearance. The prosecutor thus stated: "How can you ever forget? Her husband died right after this. She told us she lost a day of her husband's life because of this." In the same vein, the prosecutor closed his summation by defending Marasanov's motivation against defense counsel's attack, saying that:

> She just wants the person who stole her purse, she just wants the person who took her credit cards, who took her credit cards, who took her money, who took her jewelry, who broke her shoulder, who took her documents, who took her husband's medicine, who took one of the last days of her life with her husband.

The references to "lost" or "last days" were improper, and the trial judge correctly sustained objections to each of them. Nevertheless, in the framework of the entire closing, these brief references did not render petitioner's trial fundamentally unfair. The closing covered every piece of evidence in the case and these remarks were far overshadowed by the weight of that evidence against petitioner.

In sum, the improper comments were not so egregious; the trial court took curative measures to mitigate them by sustaining the objections; and they did not affect the likelihood of petitioner's conviction in view of all of the evidence in the case. I therefore cannot conclude that the Appellate Division's decision sustaining the conviction on this issue was contrary to or an unreasonable application of Supreme Court authority.

## CONCLUSION

The petition is denied. The Clerk is directed to enter judgment in favor of respondent. Because the prosecutor did make improper remarks in summation, that point is "adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039 (2003) (internal citations omitted), and therefore a certificate of appealability is issued for Point III above only. 28 U.S.C. § 2253(c)(2) (2006).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

U.S.D.J.

Dated: Brooklyn, New York
      December 11, 2007